RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0145p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee*,

    *v.*

TYLER G. WILLIAMS,

    *Defendant-Appellant*.

No. 21-5856

---

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:20-cr-00107-1—Danny C. Reeves, Chief District Judge.

Argued: June 7, 2022

Decided and Filed: July 6, 2022

Before: GIBBONS, WHITE, and NALBANDIAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Elizabeth A. Arrick, CASEY, BAILEY & MAINES, PLLC, Lexington, Kentucky, for Appellant. John Patrick Grant, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Elizabeth Anne Arrick, CASEY, BAILEY & MAINES, PLLC, Lexington, Kentucky, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Tyler Williams pled guilty to possession of a mixture or substance containing methamphetamine with intent to distribute and being a felon in possession of a firearm. Based on four previous Kentucky robbery convictions, the district court

designated Williams as an armed career criminal under the Armed Career Criminal Act ("ACCA"). Williams appeals, arguing that this designation was improper. We affirm.

I

In October 2020, Williams was indicted in the Eastern District of Kentucky for possession of a mixture or substance containing methamphetamine with intent to distribute and being a felon in possession of a firearm. Pursuant to a plea agreement, he pled guilty to both counts but reserved the right to challenge his designation as an armed career criminal under the ACCA at sentencing.

The district court determined that Williams was an armed career criminal based on his previous robbery convictions. When Williams was sixteen,[1] he pled guilty in Fayette County Circuit Court to one count of robbery in the first degree, in violation of Ky. Rev. Stat. Ann. § 515.020, and three counts of robbery in the second degree, in violation of Ky. Rev. Stat. Ann. § 515.030. All four robberies were charged in the same indictment. The robberies occurred on separate days but were committed by the same individuals. On January 15, 2004, Williams, Nicholas Shannon, and Christopher Wirick robbed a Thorntons gas station. On January 23, 2004, the same three individuals robbed Thorntons.[2] On January 29, 2004, the same three individuals robbed Shoppers Village Liquor, and on March 13, 2004, they robbed a BP gas station.

Williams objected to his designation as an armed career criminal. He argued that the second-degree robbery convictions were not predicate offenses under the ACCA because they were not violent and not separate offenses. The district court overruled the objection, finding the offenses were committed on separate occasions and were violent felonies under the ACCA. Due to the career-criminal designation, the guidelines range was 188 to 235 months' imprisonment. After considering the factors under 18 U.S.C. § 3553(a), the district court sentenced Williams to 200 months' imprisonment on both counts, to run concurrently.

---

[1] Williams was convicted as an adult for these offenses.

[2] It is not clear from the record whether this was the same Thorntons location.

Williams appeals, arguing that his designation as an armed career criminal was improper because second-degree robbery in Kentucky is not a violent felony under the ACCA and his predicate offenses were not committed on different occasions.

## II

We review de novo whether Williams's previous convictions qualify as predicate offenses under the ACCA. *See United States v. Malone*, 889 F.3d 310, 311 (6th Cir. 2018). We first discuss whether second-degree robbery in Kentucky is a violent felony under the ACCA, and then whether Williams's robbery offenses were committed on separate occasions under *Wooden v. United States*, 142 S. Ct. 1063 (2022).

### A

Williams was convicted of three counts of second-degree robbery in violation of Ky. Rev. Stat. Ann. § 515.030. An issue of first impression in our court, Williams argues that this offense is not a violent felony under the ACCA because second-degree robbery does not require violent force, nor does it require purposeful or knowing conduct.

#### 1

Under the ACCA's "elements clause," a violent felony includes an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *United States v. Wilson*, 978 F.3d 990, 993 (6th Cir. 2020). We apply a categorical approach to determine whether Kentucky second-degree robbery satisfies the elements clause. *Wilson*, 978 F.3d at 993. Under this approach, we look only to the statutory elements of section 515.030, rather than the particular facts of Williams's convictions. *Id.* Section 515.030(1) states, "A person is guilty of robbery in the second degree when, in the course of committing theft, he or she uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft." We must determine whether "physical force" under section 515.030 falls under the elements clause's definition of "physical force."

The Supreme Court has elaborated on what constitutes physical force under the elements clause. In *Johnson v. United States*, 559 U.S. 133 (2010), the Court determined that Florida's

felony offense of battery was not a violent felony under the ACCA. A defendant could be convicted of battery in Florida if "he merely '[a]ctually and intentionally touche[d]' the victim." *Id.* at 137. The Court explained that physical force under the elements clause means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. Battery in Florida could be satisfied by nominal physical contact and, therefore, it did not constitute a violent felony under the ACCA. *Id.* at 138, 145.

In *Stokeling v. United States*, 139 S. Ct. 544 (2019), the Court considered whether a conviction under Florida's robbery statute, which defines robbery as "the taking of money or other property . . . from the person or custody of another, . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear," Fla. Stat. § 812.13(1) (1995), qualifies as an ACCA predicate offense. 139 S. Ct. at 549. The Florida Supreme Court had "explained that the 'use of force' necessary to commit robbery requires 'resistance by the victim that is overcome by the physical force of the offender.'" *Id.* (citation omitted). The Supreme Court held "that the elements clause encompasses robbery offenses that require the criminal to overcome the victim's resistance." *Id.* at 550. Explaining the line between *Johnson* and *Stokeling*, the Supreme Court stated:

> [T]he force necessary to overcome a victim's physical resistance is inherently "violent" in the sense contemplated by *Johnson*, and "suggest[s] a degree of power that would not be satisfied by the merest touching." This is true because robbery that must overpower a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle. The altercation need not cause pain or injury or even be prolonged; it is the physical contest between the criminal and the victim that is itself "capable of causing physical pain or injury."

*Id.* at 553 (citations omitted). The Court emphasized that "*Johnson* did not purport to establish a force threshold so high as to exclude even robbery from ACCA's scope." *Id.* Nor did it "require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Id.* at 554.

Turning to the present case, there is limited caselaw in Kentucky discussing the degree of force required for second-degree robbery. Taking a bird's eye view, "[t]he basic robbery offense in Kentucky is second-degree robbery." *Hatton v. Commonwealth*, No. 2014-SC-000248-MR,

2016 WL 2604806, at *2 (Ky. May 5, 2016). It becomes first-degree robbery when accompanied by an aggravating circumstance, such as causing physical injury. *Id.* And it becomes theft when there is a lack of physical force. *Id.* at *3. In *Hatton*, the Kentucky Supreme Court distinguished the force necessary for robbery from theft:

> All of the evidence was that [the defendant] stole [the victim's] wallet by physically wresting it away when she resisted his efforts to take it from her hands. By using physical force against [the victim] to remove the wallet from her grasp, [the defendant's] theft became at least second-degree robbery. There was no evidence to the contrary. . . such as if the circumstances had been more of a pickpocket-type situation whereby the theft was accomplished without the victim's awareness.

2016 WL 2604806, at *4.

Physical force is defined by statute as "force used upon or directed toward the body of another person." Ky. Rev. Stat. Ann. § 515.010. In a series of cases from the early 1900s, before the adoption of Kentucky's current penal code, the Kentucky Court of Appeals[3] explained that the slightest use of force is sufficient for robbery so long as it is "sufficient to take the property against the owner's will." *Commonwealth v. Davis*, 66 S.W. 27, 27 (Ky. 1902); *see also Stockton v. Commonwealth*, 101 S.W. 298, 299 (Ky. 1907); *Jones v. Commonwealth*, 66 S.W. 633, 634 (Ky. 1902). In 2005, the Kentucky Court of Appeals relied in part on *Davis* in assessing the degree of force required for second-degree robbery under section 515.030. *See Boger v. Commonwealth*, 2005 WL 1704079, at *2 & n.7 (Ky. Ct. App. July 22, 2005).

A district court in the Western District of Kentucky found that the minimum level of force criminalized by section 515.030 was insufficient to constitute a violent felony under the ACCA after the Supreme Court's decision in *Johnson*. *See United States v. Bizor*, No. 3:17-CR-120-RGJ, 2018 WL 6515138 (W.D. Ky. Dec. 11, 2018) (Jennings, J.). The court explained,

> [T]he minimum level of force criminalized by KRS 515.030, robbery in the second-degree, appears to be *de minimis* as it can be as little as the force sufficient to take or snatch [the] personal possession of another against his will, such as snatching a pocketbook from the hand of the victim so quickly that the victim did not have the opportunity to resist. This is lower than the level of violent force

---

[3]This was the highest state court in Kentucky at the time.

required by *Johnson*, *i.e.* that force which is "capable of causing physical pain or injury to another person."

*Id.* at *5 (quoting *Johnson*, 559 U.S. at 140). After *Stokeling*, however, the same court changed course, noting that "force sufficient to snatch a personal possession of another against his will" was sufficiently violent under the new precedent. *United States v. Thomas*, No. 3:18-CR-165-RGJ, 2019 WL 5549206, at *1 (W.D. Ky. Oct. 25, 2019) (Jennings, J.).

While there is little state caselaw on the subject, the caselaw that does exist shows that second-degree robbery in Kentucky requires a level of force sufficient to satisfy the standard set forth in *Stokeling*. "Robbery is ordinarily thought of as theft combined with an assault." *Hatton*, 2016 WL 2604806, at *3. As the Kentucky Supreme Court has explained, it is not robbery to take another's property without their awareness, as a pickpocket does. *Id.* at *4. Rather, robbery requires that the defendant overcome the victim's will. *Id.* *Stokeling* established that any level of force sufficient to overcome a victim's resistance is sufficiently violent for the ACCA.

Williams argues that the term "will," as used in the early Kentucky robbery cases, and the term "resistance," as used in *Stokeling*, are not synonymous, and that a second-degree robbery conviction could be sustained even where the defendant did not overcome the resistance of the victim. In *Stokeling*, the Supreme Court used the terms "will" and "resistance" somewhat interchangeably, appearing to equate "will" with physical resistance or aversion rather than other, more passive forms of non-physical resistance such as mere mental disagreement. It stated that "the force necessary to overcome a victim's *physical resistance* is inherently 'violent' . . . This is true because robbery that must overpower a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle." 139 S. Ct. at 553 (emphasis added). The Court rejected the idea that the force required to effectuate a robbery under Florida law was equivalent to "[t]he nominal contact that *Johnson* addressed," explaining that "[t]he force necessary for misdemeanor battery does not require resistance or even physical aversion on the part of the victim; the 'unwanted' nature of the physical contact itself suffices to render it unlawful." *Id.*

It is true that several of the early Kentucky robbery cases on which Williams relies did not involve physical resistance or aversion on the part of the victim. In *Stockton*, for example,

the court upheld a robbery conviction where the victim testified, "I stretched out my hand with the $10 bill, holding the bill in my hand. Whereupon [the defendant], who was standing at my right, snatched the bill from me, and [the two defendants] ran." 101 S.W. at 299. And in *Jones*, the court sustained a robbery conviction where the victim testified that the defendant "got behind me and wrenched the pocketbook out of this [left] hand; and, of course, he being stronger than I, I had to give way to him, and let him have it." 66 S.W. at 633. However, the court observed that the victim apparently had not "tried to hold onto the pocketbook," and that "the snatching or grabbing and jerking of [the] pocketbook out of the witness' hand was probably done so quickly that he had no chance to actively resist." *Id.* at 634.

These cases are similar to the Florida cases cited by the Court in *Stokeling* to illustrate, by way of negative example, the principle that under Florida law, robbery requires "resistance by the victim that is overcome by the physical force of the offender." 139 S. Ct. at 554–55 (quoting *Robinson v. State*, 692 So.2d 883, 886 (1997)). In one case, the Florida Court of Appeals held that "a defendant who merely snatches money from the victim's hand and runs away has not committed robbery." *Id.* at 555 (citing *Goldsmith v. State*, 573 So.2d 445 (Fla. Ct. App. 1991)). And in another case, the Florida Court of Appeals held that "a defendant who steals a gold chain does not use force within the meaning of the robbery statute, simply because the victim feels his fingers on the back of her neck." *Id.* (quoting *Walker v. State*, 546 So.2d 1165, 1166–67 (Fla. Ct, App. 1989)) (internal quotation marks and alteration omitted).

Although these early Kentucky cases give us pause, Williams cites no recent Kentucky cases holding or implying that second-degree robbery can be committed with a level of force less than that identified in *Stokeling*. To be sure, the Kentucky Court of Appeals in its 2005 opinion in *Boger* relied in part on *Davis* to uphold a second-degree robbery conviction. 2005 WL 1704079, at *2 & n.7. But in both *Davis* and *Boger*, the facts showed that the victim physically resisted the attacker. *See id.* at *2 (observing that "the victim's purse was wrenched from her as she resisted her attacker. Indeed, the victim was drug from the front of her car into the traffic aisle of the parking lot"); *see also Davis*, 66 S.W. at 27 (noting the victim testified that the defendant "grabbed a purse which she was carrying in her hand [and] that she resisted with all her force, but that he slipped one of his hands over her wrist, and wrenched her pocketbook out

of her hand with his other hand"). We therefore cannot conclude that the Kentucky second-degree robbery statute encompasses a degree of force less than that identified in *Stokeling*.

Separately, Williams notes that, unlike Florida, Kentucky does not have a "sudden snatching" statute under which a conviction can be obtained without showing that the defendant used force beyond that necessary to obtain possession of the victim's property or that the victim resisted the defendant. *See Stokeling*, 139 S. Ct. at 555. This, argues Williams, is a "key distinction" in determining whether Kentucky's second-degree robbery statute meets the definition of force set forth in *Stokeling*. CA6 R. 27, Reply Br. at 3 (quoting *United States v. Smith*, 928 F.3d 714, 716 (8th Cir. 2019)). But Kentucky has a "theft by unlawful taking or disposition" statute that makes it unlawful to "[t]ake[] or exercise[] control over movable property of another with intent to deprive him or her thereof." Ky. Rev. Stat. Ann. § 514.030(1). Although, unlike Florida's sudden-snatching statute, section 514.030 makes no reference to the victim's resistance, *Hatton* made clear that a conviction under this statute does not require a showing that the defendant used any physical force. 2016 WL 2604806, at *3; *see also Oakes v. Commonwealth*, 320 S.W.3d 50, 58 (Ky. 2010) (stating that the defendant would be entitled to instruction under § 514.030(1)(a) "only if the jury could reasonably conclude that he committed theft without any physical force"). Looking at Kentucky law as a whole, then, robbery occurs when the defendant steals using force sufficient to overcome the victim's will and does not encompass taking without the victim's awareness or without physical force. Therefore, second-degree robbery in Kentucky requires a sufficient level of force to satisfy the elements clause of the ACCA.

**2**

Williams also argues that second-degree robbery in Kentucky lacks the mens rea required for a violent felony under the ACCA.

In *Borden v. United States*, 141 S. Ct. 1817 (2021), the Supreme Court held that a criminal offense could not count as a violent felony under the ACCA if it requires only a mens rea of recklessness. Looking to the relevant offense here: "A person is guilty of robbery in the second degree when, in the course of committing theft, he or she uses or threatens the immediate

use of physical force upon another person with intent to accomplish the theft." Ky. Rev. Stat. Ann. § 515.030. Williams argues that the specific intent requirement only applies to the theft and not to the use of force, which he claims can be done recklessly.

The statute's commentary notes, "[t]o be convicted under KRS 515.030, an offender must have intended, with his use or threatened use of physical force, to accomplish a theft." Ky. Rev. Stat. Ann. § 515.020, cmt. (1974). And, as discussed above, Kentucky law defines "physical force" as "force used upon or directed toward the body of another person," Ky. Rev. Stat. Ann. § 515.010; thus, the force criminalized by section 515.030 satisfies *Borden*'s requirement that "the perpetrator direct his action at, or target, another individual." 141 S. Ct. at 1825.

In *Hobson v. Commonwealth*, 306 S.W.3d 478 (Ky. 2010), the Kentucky Supreme Court elaborated on the intent required for robbery. Hobson tried to use a stolen credit card at a Wal-Mart, but the cashier recognized it as stolen and reported the situation. *Id*. at 478–79. When Hobson was confronted, he bolted out of the store into the parking lot while the items he planned to steal remained at the checkout counter. *Id.* at 479. An officer caught Hobson in the parking lot and a scuffle ensued, during which the officer's ankle broke. *Id.* Hobson was arrested and convicted of first-degree robbery. *Id.* The Kentucky Supreme Court reversed Hobson's conviction, explaining that "[i]f, at the time a defendant first uses or threatens force, he has abandoned his intention to accomplish a theft, the plain language of the robbery statutes constrains us to conclude that the elements of robbery are not met." *Id.* at 482. "The language admits to no interpretation other than that the force (or threat of force) be contemporaneous with an intent to accomplish the theft." *Id.* As Hobson's "use of force against [the officer] was not 'with intent to accomplish the theft,' the altercation cannot satisfy the physical force element of the statute, and . . . the conviction for first-degree robbery cannot be sustained." *Id.* at 483. The court further noted that while an instruction was given for second-degree robbery, the statutory definition was the same as first-degree robbery, except for the aggravating factors. *Id.* Therefore, "[i]t follows by the same rationale, that a conviction under the second-degree robbery statute cannot be sustained under the facts of [Hobson's] case." *Id.* As shown in *Hobson*, the use of force in robbery must be done with the specific intent to commit a theft, not with mere recklessness.

Citing *Slaven v. Commonwealth*, 962 S.W.2d 845 (Ky. 1997), Williams argues that without the intent to commit a theft during robbery, all that is left is wanton assault or endangerment. Thus, he argues, the Kentucky second-degree robbery statute's physical force requirement is satisfied with, at worst, a wanton mental state. In *Slaven*, the Kentucky Supreme Court considered the effect of an intoxication defense on a robbery charge. The court explained that there are two elements to robbery: "(1) use of physical force with (2) the intent to commit a theft." *Id*. at 857. If an intoxication defense was successful and eliminated intent, then "the theft element of robbery evaporates[,] leaving only the element of physical force." *Id.* Therefore, "an instruction on first-degree wanton endangerment, as a lesser included offense," would be appropriate. *Id.* (citation omitted). The court explained, "there is no offense of wanton robbery." *Id. Slaven* did not hold that second-degree robbery may be accomplished using force in a wanton manner. It simply made clear that if there is no intent to steal, there is no robbery. Robbery's intent element cannot be separated from its force element; otherwise it becomes a different crime altogether. Therefore, *Slaven* does not support the principle that one can use force recklessly and still commit robbery in Kentucky.

Williams also argues that because robbery is normally thought of as theft combined with assault, and assault can be accomplished wantonly or recklessly, section 515.030's physical force requirement can be satisfied by mere reckless conduct. We find this argument unavailing because Williams cites no cases upholding a second-degree robbery conviction where the defendant used physical force recklessly. *Hatton* does not help Williams; the evidence there indicated that the defendant "us[ed] physical force against [the victim] to remove the wallet from her grasp." 2016 WL 2604806, at *4. And the two other cases Williams cites, *Birdsong v. Commonwealth*, 347 S.W.3d 47 (Ky. 2011), and *Tunstull v. Commonwealth*, 337 S.W.3d 576 (Ky. 2011), are inapposite because they concern interpretations of what conduct constitutes a *threatened* use of physical force under Kentucky's second-degree robbery statute. *See Birdsong*, 347 S.W.3d at 49 ("[T]he question for this Court is whether aggression toward inanimate objects in the presence of others during a theft sufficiently 'threatens the use of physical force on another person.'"); *Tunstull*, 337 S.W.3d at 583 (considering whether "aggressively demanding money" constitutes a threat for purposes of Kentucky's second-degree robbery statute).

Given the statute's plain language, supported by the commentary and caselaw, Kentucky second-degree robbery requires that an individual use force with the specific intent to accomplish theft. Therefore, it is not a crime that can be committed with a mens rea of recklessness and is not precluded as an ACCA offense under *Borden*.

**B**

Under the ACCA, the three previous convictions that can result in a defendant's designation as an armed career criminal must be "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Williams argued to the district court that his Kentucky robbery offenses were not committed on separate occasions because they were charged in a single indictment. The district court disagreed, finding that each robbery was committed on a different occasion. During the pendency of this appeal, the Supreme Court addressed this issue in *Wooden v. United States*, 142 S. Ct. 1063 (2022).

In one evening, Wooden burglarized ten units in a storage facility, proceeding from unit to unit by crushing the interior walls between them. *Wooden*, 142 S. Ct. at 1067. The Supreme Court held that these burglaries occurred on one occasion, not ten separate occasions. *Id.* at 1069. The Court explained that determining whether offenses occurred on separate occasions is a "multi-factored" inquiry. *Id.* at 1070. Relevant factors include timing, proximity of location, and "the character and relationship of the offenses." *Id.* at 1071. We apply these factors to Williams's robbery offenses.

"Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events." *Id.* Williams's four robberies occurred on four separate dates, each separated by at least six days: January 15, 2004; January 23, 2004; January 29, 2004; and March 13, 2004. Therefore, this factor favors a conclusion that the offenses occurred on separate occasions.

As to proximity, "the further away crimes take place, the less likely they are components of the same criminal event." *Id.* Two of the robberies occurred at Thorntons, though it is not clear whether they occurred at the same location. The other two robberies occurred at Shoppers

Village Liquor and a BP station. Given that the robberies occurred at different stores and on different days, this factor weighs in favor of finding that the offenses occurred on separate occasions.

As for the character of the offenses, "[t]he more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion." *Id.* The same three individuals committed all four robberies in Fayette County, Kentucky. Therefore, the four robberies are similar, but they do not share a common scheme in the same way as *Wooden*, in which the defendant burglarized each storage unit simultaneously in the exact same manner.

The Court explained that "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Id.* "Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" *Id.* (citation omitted). Given the substantial gap in time between Williams's robbery offenses and some variety in locations, the offenses were committed on separate occasions under the ACCA.[4] *See United States v. Miles*, No. 21-5481, slip op., at 3 (6th Cir. Apr. 25, 2022) (finding offenses committed on separate days were separate offenses under the ACCA after *Wooden*); *United States v. Barrerra*, No. 20-10368, 2022 WL 1239052, at *2 (9th Cir. Apr. 27, 2022) (same); *United States v. Daniels*, No. 21-4171, 2022 WL 1135102, at *1 (4th Cir. Apr. 18, 2022) (same).

Williams raises a separate issue that he seemingly did not raise before the district court. He contends the issue of whether his robbery offenses were committed on separate occasions under the ACCA is a jury issue. However, this court has already held that "consistent with *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)], a sentencing judge may answer the question of

---

[4]Williams argues the rule of lenity dictates that this court find that the ACCA does not apply. Concurring in *Wooden*, Justice Gorsuch raised concerns with the ability to consistently interpret what constitutes separate occasions under the ACCA, noting "[t]he statute contains little guidance, and reasonable doubts about its application will arise often." 142 S. Ct. at 1087 (Gorsuch, J., concurring). He emphasized that when these doubts arise, "they should be resolved in favor of liberty" per the rule of lenity. *Id.* Applying the rule of lenity may be appropriate in some future circumstances, such as in the example proposed by Justice Gorsuch of "a defendant who sells drugs to the same undercover police officer twice at the same street corner one hour apart." *Id.* at 1080. In Williams's case, however, the robberies were sufficiently separate in time and place that it is clear they occurred on separate occasions.

whether prior offenses were 'committed on occasions different from one another.'" *United States v. King*, 853 F.3d 267, 274 (6th Cir. 2017) (quoting *United States v. Burgin*, 388 F.3d 177, 183 (6th Cir. 2004)).

### III

The district court found that Williams was an armed career criminal under the ACCA based on four previous Kentucky robbery convictions. Second-degree robbery in Kentucky requires force sufficient to overcome the victim's will and not mere pickpocketing, which establishes it as a violent felony under Supreme Court precedent. And second-degree robbery in Kentucky cannot be conducted with a mens rea of recklessness, so it is not precluded as an ACCA offense under *Borden*. Further, Williams's robbery offenses occurred on separate occasions under *Wooden*. We affirm the district court.